THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

JOHN WILLIAM TURNER,               )
                                   )
        Plaintiff,                 )
                                   )
vs.                                )        NO. CIV-07-268-D
                                   )
MICHAEL E. KLIKA,   et al.,        )
                                   )
        Defendants.                )

## O R D E R

Before the Court is the motion for summary judgment [Doc. No. 114] of Defendant City of

Oklahoma City ("City").  Plaintiff timely responded to the motion,[1] and the City filed a reply.

Background:

This action is brought pursuant to 42 U. S. C. § 1983 and the Oklahoma Governmental Tort

Claims Act ("GTCA").   Plaintiff seeks to recover damages for alleged constitutional rights

violations and tortious conduct resulting from a child molestation investigation conducted by the

Oklahoma City Police Department, the Oklahoma Department of Human Services ("DHS"), and the

Oklahoma Attorney General.   Individual capacity claims are asserted against Carol Houseman

("Houseman"), a DHS social worker, as well as against Oklahoma City police officer Michael Klika

("Klika"),  five "John Doe" defendants, and the City.[2]

Plaintiff alleges that, following a report to Oklahoma City police that he had sexually

---

[1]Although Plaintiff's response was labeled with an incorrect case number, it was deemed timely filed in this case.

[2]In the Second Amended Complaint, Plaintiff also sued  Assistant Attorney General Tom Gruber and the Attorney General of Oklahoma.  However, by Joint Stipulation of Dismissal [Doc. No. 108], his claims against Gruber and the Attorney General were dismissed with prejudice.  Although Plaintiff continues to list DHS as a defendant, he acknowledges that it is no longer a party defendant because it was dismissed by Order of April 24, 2007 [Doc. No. 33].

molested his five-year-old daughter, H.M.T., Plaintiff was detained at his workplace on April 20, 2005 while Oklahoma City police officers searched his residence pursuant to a search warrant. Plaintiff, who was employed at the time by the State of Oklahoma as an Assistant Attorney General, contends his detention constituted a Fourth Amendment violation because he was unlawfully seized or arrested in violation of his rights.  While the search warrant was being executed, Oklahoma City police and DHS personnel interviewed H.M.T. and placed her in  protective custody; Plaintiff contends his due process rights were violated because these actions were taken without prior notice to him, and his right to familial association was infringed because of subsequent restrictions on his ability to contact his daughter.

The City is named as a defendant in the First and Fourth Causes of Action in the Second Amended Complaint.  The First Cause of Action, which is also asserted against DHS and the Attorney General,[3] seeks to hold the City liable under the GTCA for the allegedly tortious conduct of the individual defendants.   In the Fourth Cause of Action, Plaintiff seeks to hold the City liable pursuant to § 1983, alleging that the City's "practices customs and policies" led to the deprivation of his constitutional rights. The City's § 1983 liability is also premised on the allegation that it negligently and carelessly trained, supervised, and retained Klika and the John Doe defendants.[4] Second Amended Complaint, ¶ 71.  He also alleges the City "developed and maintained policies and customs using deliberate indifference" to the rights of citizens, including Plaintiff, as well as a policy and/or custom "to inadequately train, supervise, and retain its police officers, including

---

[3] Because the Attorney General and DHS have been dismissed from this action, the City is the only remaining defendant against whom the GTCA claims are asserted.

[4] The record reflects that Plaintiff has never identified the John Doe defendants, but describes them as Oklahoma City police officers.  The record further reflects Plaintiff has never  perfected service of process upon any police officers other than Klika.

Defendants Klika and Does 1 through 5." *Id.,* ¶¶ 71, 74. Plaintiff further alleges the City "approved or ratified" the allegedly unlawful and deliberate, reckless conduct of Klika and John Does 1 through 5. Second Amended Complaint, ¶ 75. As a result of the unlawful conduct, Plaintiff contends he suffered extreme emotional distress and anguish, as well as economic loss; he also alleges he incurred legal expenses and suffered embarrassment, sleeplessness, and injury to his professional reputation. *Id.* at ¶ 76.

The City seeks judgment on all claims asserted against it, arguing the undisputed material facts establish that, as a matter of law, Plaintiff cannot recover against the City on the asserted claims. Plaintiff contends material factual disputes preclude summary judgment.

<u>Summary Judgment standard:</u>

Summary judgment shall be granted where the undisputed material facts establish that one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To avoid summary judgment, a plaintiff must present more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict for the non-moving party." *Id.* The facts in the record and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *Swackhammer v. Sprint/United Mgmt. Co.,* 493 F.3d 1160, 1167 (10th Cir. 2007); *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). However, to establish the existence of a "genuine" material factual dispute, the nonmoving party must present evidence to show more than "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 45 U.S. 574, 588 (1986).

Where the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex,* 477 U.S. at 322. However, it is not the responsibility of the summary judgment movant to disprove the plaintiff's claim; rather, the movant need only point to "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The burden then shifts to the nonmovant to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citations omitted).

In opposing a summary judgment motion, a plaintiff cannot rely on the allegations in his complaint, his personal beliefs, or conclusory assertions; rather, he must come forward with evidence outside the pleadings sufficient to create a factual dispute with regard to the issue on which judgment is sought. Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 324. The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *Adler,* 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992), *cert. denied,* 506 U.S. 1013 (1992)). Conclusory arguments in the nonmovant's brief are not adequate to create an issue of fact, and are insufficient to avoid summary judgment. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003). It is not the responsibility of the Court to attempt to locate evidence not cited by Plaintiff which could support his position. *Adler,* 144 F.3d at 671.

"The purpose of a summary judgment motion is to assess whether a trial is necessary." *Berry v. T-Mobile USA, Inc.,* 490 F. 3d 1211, 1216 (10th Cir. 2007) (citing *White v. York Int'l Corp*., 45 F.3d 357, 360 (10th Cir.1995)). "In other words, there 'must be evidence on which the jury could

reasonably find for the plaintiff.'" *Id.* (quoting *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995)).

The record before the Court:

In its motion, the City sets out a list of 23 facts which it contends are material and undisputed. Plaintiff's response states he "admits or denies as immaterial" the City's Fact Nos. 1-7, 9, 10, 11, 14, 16-17, and 22-23. Plaintiff's Response at p. 1. Plaintiff does not identify the facts he contends are immaterial, nor does he offer any explanation or evidence to support his contention. Plaintiff then sets out his response to the City's enumerated factual statements which he contends are disputed.

As the City points out in its reply brief, Plaintiff's statement that he "admits or denies as immaterial" some of the City's fact statements is insufficient to create a dispute regarding those statements. Pursuant to the Local Civil Rules of this Court, the party opposing summary judgment must include a statement identifying the material facts which he contends are disputed, and he must include references to the record which he contends demonstrate a dispute:

> The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's facts that is disputed. All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.

LCvR 56.1(c). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it." *Grynberg v. Total, S. A.,* 538 F. 3d 1336, 1345 (10th Cir. 2008) (citing Fed.R.Civ.P. 56(e) and *Trevizo v. Adams*, 455 F.3d 1155, 1159-60 (10th Cir.2006)).

When challenging the movant's assertion that a fact is undisputed, the responding party has the burden "to ensure that the factual dispute is portrayed with particularity, without...depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F. 3d 1283, 1290 (10th Cir. 2004) (quotations omitted); *Mitchell v. City of Moore*, 218 F. 3d 1190, 1199 (10th Cir. 2000) (court is "not obligated to comb the record" to determine the basis for a claim that a factual dispute exists). If a nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be deemed admitted for purposes of the motion. Fed. R. Civ. P. 56(e)(2).

In this case, Plaintiff fails to specifically identify the basis for denying any of the facts set forth in the City's fact statement Nos. 1-7, 9, 10, 11, 14, 16, 17, 22 and 23. Accordingly, those facts are admitted for purposes of this motion.

Pursuant to the City's statement of undisputed fact Nos. 1-7, Defendant Klika has been employed as an Oklahoma City police officer since 1991. He received more than 700 hours of initial training at the Training Academy, followed by four months of required training with a Field Training Officer. Subjects covered in his Training Academy courses included probable cause, search warrants, search and seizure, interviews and interrogation, civil rights, sexual assaults, criminal investigation of child abuse, child abuse and exploitation investigation, crisis intervention, and sex crime investigation. Thereafter, Klika attended more than 600 hours of in-service training.

In 2002, at his request, Klika transferred from the Operations Bureau to the Investigations Bureau, where he completed the Investigator Training Program; he was assigned to the Sex Crimes Unit of the Person and Property Crimes Division. In 2003, he was transferred at his request to the Youth and Family Services Division of the Domestic Violence Unit, and he remained assigned there

at the time of the incidents on which Plaintiff's claims are based.

In its Fact Statement No. 8, the City lists specific police department policies adopted by the City as of April 20, 2005; copies of each listed written policy are attached as exhibits to its brief. The listed written policies are:  Mission Statement of the Oklahoma City Police Department, City Ex. 17; Standard of Conduct, City Ex. 18;   Respect for Constitutional Rights, City Ex. 19; Discipline, City Ex. 20; Individual Dignity, City Ex. 21; Role of the Individual Officer, City Ex. 22; Nature of Task, City Ex. 23; and Police Action Based on Legal Justification, City Ex. 24.

Plaintiff purports to deny Fact Statement No. 8, but he offers no argument that the listed policies were not in force at the time relevant to this action; in fact, his response does not mention any of the listed policies.  Nor does he challenge the validity or accuracy of the City's exhibits consisting of the text of the listed policies. Instead, Plaintiff summarizes his allegations regarding the conduct of Klika, and he references exhibits consisting of excerpts from the deposition testimony of Klika and other witnesses.  The cited exhibits do not address the police department policies listed in Fact Statement No. 8.   Notwithstanding Plaintiff's lengthy response, his argument does not present facts supported by evidence to dispute the City's statement that the policies listed in Fact Statement No. 8 were adopted by the City.  Accordingly, Fact Statement No. 8 is deemed admitted for the purpose of this motion.

In Fact Statement No. 9, the City lists specific police department procedures which it states have been adopted.  The Court has determined, *supra*, that this statement is deemed admitted. Accordingly, for purposes of this motion, it is undisputed that, at the time relevant to Plaintiff's claims, the City had adopted the following police department procedures: Obtaining and Executing a Search Warrant, Field Preparation, Office Preparation, Service of Warrant, Search, and Conclusion

of Search, copies of which are submitted collectively as City Ex. 25. Additionally, it is not disputed

that the City had adopted these additional procedures: Arrest Procedure, Ex. 61; Juvenile

Procedures and Purpose, Ex. 26; Taking a Child into Custody, Ex. 27;

Abused/Neglected/Abandoned Children and When DHS Social Worker is Present, collectively

submitted as Ex. 28; Sex Offenses, Ex. 29; Rape/Sexual Abuse of Children, Ex. 30; Child Abuse

Response and Evaluation Detail, Ex. 31; Probable Cause Affidavit, Ex. 32; Probable Cause Hearing

Procedure, Ex. 33; Discipline, Ex. 34; and Responsibility [for Operations Manual], Ex. 35.

Plaintiff expressly does not dispute that the City adopted the police department rules set forth

in its Fact Statement No. 10; these include Compliance with Policies, Procedures and Rules;

Condition of Manual; Truthfulness/Cooperation; and Constitutional Rights. Copies of these rules

are submitted, respectively, as City Exs. 36, 37, 38 and 39.

It is not disputed that Defendant Klika and all other Oklahoma City police officers are

required to comply with the policies, procedures and rules contained in the Operations Manual.

Officers are responsible for keeping the manual provided to them current by adding any revisions

to its contents. The parties agree that Klika obtained his manual in 2000, and was issued and signed

receipts for the original manual and subsequent updates. City Exs. 40-44.

In its Fact Statement Nos. 12 and 13, the City explains the events leading up to the April 20,

2005 occurrences on which Plaintiff's claims are based. The evidence, not disputed by Plaintiff,

establishes that the child molestation allegation was received while Klika was investigating a March

12, 2005 domestic violence complaint by Plaintiff's girlfriend, Toni Cooper. The record before the

Court in connection with the three separate summary judgment motions[5] sets out the facts related

---

[5]In addition to the City, defendants Klika and Houseman have each filed summary judgment motions.

to the domestic violence investigation; those facts are set out at pages 6 through 9 of the Court's separate order addressing  Klika's motion for summary judgment; that discussion is adopted and incorporated herein.  It is not disputed that, as a result of the domestic violence investigation, Plaintiff was charged with Domestic Assault and Battery in the Presence of a Child and with Interference with an Emergency Phone Call.[6]

While his investigation of the domestic abuse complaint was ongoing, Klika was contacted by Ms. Cooper, who told Klika she was concerned that Plaintiff had molested her minor son, T. K.C. Based on comments made to her by T.K.C., Ms. Cooper was also concerned that Plaintiff had molested H.M.T. by improperly touching her.   City Exs. 47 and 48.   As set out in more detail in the Court's order addressing Klika's summary judgment motion, police began investigating the possible molestation of T.K.C. and H.M.T.   Officers Patricia Helm and Teresa Sterling of the Oklahoma City police Child Abuse Unit were assigned to assist Klika in the investigation.  On April 20, 2005, Inspector Helm executed an affidavit for a search warrant to search Plaintiff's residence. A copy of the 17-page affidavit is submitted as City Ex. 51. The affidavit summarizes the interviews conducted by Klika and Helm.[7] It is not disputed that Oklahoma County District Judge Ray Elliott issued the search warrant on April 20; a copy is submitted as City Exhibit 63.   Plaintiff offers no argument or evidence suggesting there is a City policy or procedure which he contends caused Helm to prepare an allegedly inadequate  affidavit in this manner, nor does he suggest that Helm acted

[6]The record reflects that Plaintiff entered  a plea of guilty regarding these charges.  Deposition Klika, Ex. 6, p. 49, lines 17-20; Plaintiff's deposition, Ex. 1, p. 171-72.

[7]Although Plaintiff does not challenge the authenticity of the affidavit or the validity of the search warrant,  he argues that the witnesses' statements set out in the affidavit are an "example of how second-hand or hearsay information gets misconstrued."  Response at p. 7.  Plaintiff also criticizes Inspector Helm for having relied on Klika's investigation and reports in preparing her affidavit rather than personally interviewing the contacts he had previously interviewed. *Id.*  That criticism is negated, however, by the content of the affidavit, which reflects that Inspector Helm conducted additional interviews of those witnesses.  Affidavit, City Ex. 51, pp. 6-14.

unlawfully in preparing the affidavit.

In its Fact Statement Nos. 19 and 20, the City sets out the April 20 actions of DHS social worker Houseman and Inspector Sterling with regard to arranging the interview of H.M.T. by forensic interviewer Vicki Gauldin, and summarizes the resulting report of Gauldin. City Ex. 52. The City also summarizes Inspector Sterling's testimony regarding these events. Sterling dep., City Ex. 53.

Plaintiff denies these City Fact Statement Nos. 19 and 20; however, the arguments he asserts are directed at the sufficiency of the investigation conducted by Klika and others. He does not identify any actions or inactions of the City which he contends violated his rights, nor does he identify any purported policy or procedure which allegedly motivated Klika and other police officers to violate his rights. *See* Plaintiff's responses to City Fact Statements 18-20.

The City's Fact Statement No. 21 asserts that Plaintiff was not arrested or detained by City police officers; instead, he was detained at his place of employment by Attorney General Investigator Roger Chrisco during the time period in which the search of Plaintiff's residence was ongoing. The City cites evidence in the record reflecting that this was done to prevent Plaintiff from accessing his home computers by remote connection at his office work station, as investigators had received information from a witness that Plaintiff's home computer contained pornography, and his home computer could be accessed remotely from his office. *See* City Exs. 46, 55, and 65. The basis for that concern is also set out in Inspector Helm's affidavit for the search warrant. City Ex. 51. Plaintiff denies this fact statement, and states he was detained against his will at the Attorney General's office. He states that Assistant Attorney General Tom Gruber told Plaintiff he could not use his telephone or any kind of electronic device, and had to stay with the "police investigator." In

his deposition, however, Plaintiff testified that Gruber told him to remain with the Attorney General's investigator, Roger Chrisco. *See* Plaintiff's deposition, Plaintiff's Ex. 1, p. 108, lines 21-25, p. 109, lines 1-2.   It is undisputed that Klika was not present at the Attorney General's office while Plaintiff was detained during the search of his residence.  Plaintiff offers no evidence that any other City police officer or employee was present.  Plaintiff states that Tom Gruber "indicated" the police had asked Gruber not to allow Plaintiff to use the phone or any communication device.  In his deposition, Plaintiff testified that he "supposed" Gruber was "carrying out the direction" of the police. *Id.*, lines 11-12.   Plaintiff's response to this fact statement offers no argument or evidence suggesting that the City's policies or procedures have any connection to the restrictions  imposed by Gruber.

Application:

Section 1983 claims:

To prevail on a § 1983 claim, a plaintiff must prove: "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of [law]." *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

Construing Plaintiff's allegations against the City most liberally in his favor, he seeks to hold it liable under § 1983 on the following bases: 1) the police department policies and procedures applicable to this case are unconstitutional; 2) the City failed to properly train and supervise defendant Klika and the John Doe defendants; and 3) the City ratified the allegedly unconstitutional conduct of Klika and the John Doe defendants.

A municipality cannot be held liable for the unconstitutional conduct of its employees under

a theory of *respondeat superior.  Monnell v. Dep't of Social Services,* 436 U.S. 658, 690 (1978);

*Brammer-Hoelter v. Twin Peaks Charter Academy,* 602 F. 3d 1175, 1188 (10th Cir. 2010) (citing

*Pembaur v. City of Cincinnati*, 475 U. S. 469, 480 (1986)).  Instead, a municipality is liable under

§1983 only where the employee's unconstitutional conduct occurred while he was carrying out a

policy or custom established by the municipality, and there is a direct causal link between the policy

or custom and the injury alleged. *Bryson v. City of Oklahoma City*, 627 F. 3d 784, 788 (10th Cir.

2010) (citing *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir.1993) (internal citation

omitted)).

The Tenth Circuit has determined that the municipal policy or custom required to support

§1983 municipal liability must be based on evidence of one of the following:

> (1) "a formal regulation or policy statement;" (2) an informal custom "amoun[ting]
> to 'a widespread practice that, although not authorized by written law or express
> municipal policy, is so permanent and well settled as to constitute a custom or usage
> with the force of law;'" (3) "the decisions of employees with final policymaking
> authority;" (4) "the ratification by such final policymakers of the decisions-and the
> basis for them-of subordinates to whom authority was delegated subject to these
> policymakers' review and approval;" or (5) the "failure to adequately train or
> supervise employees, so long as that failure results from 'deliberate indifference' to
> the injuries that may be caused." *Brammer-Hoelter v. Twin Peaks Charter Acad.*,
> 602 F.3d 1175, 1189-90 (10th Cir.2010) (quoting *City of St. Louis v. Praprotnik*, 485
> U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) and *City of Canton v. Harris*,
> 489 U.S. 378, 388-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)) (internal quotation
> marks omitted).

*Bryson*, 627 F. 3d at 788.  As a general rule, " a single incident of unconstitutional conduct is not

enough. Rather, a plaintiff must show that the incident resulted from an existing, unconstitutional

policy attributable to a municipal policymaker." *Nielander v. Board of County Comm'rs*, 582 F.3d

1155, 1170 (10th Cir. 2009) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).  A

plaintiff may pursue municipal liability on the basis of a single incident only if he shows "the

particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Moss v. Kopp,* 559 F. 3d 1155, 1169 (10th Cir. 2009) (citing *Jenkins v. Wood*, 81 F. 3d 988, 994 (10th Cir. 1996)).

In this case, Plaintiff alleges in the Second Amended Complaint that the City should be liable under § 1983 because 1) it adopted unconstitutional police department policies and procedures; 2) it failed to adequately train Klika and other officers; and/or 3) it ratified the unconstitutional conduct of the officers involved in the child molestation investigation. Each of these contentions is examined in light of the evidence and the applicable law.

Unconstitutional municipal policy:

A municipality may be liable under § 1983 if it "has adopted an unconstitutional law, custom, or policy." *Christensen v. Park City Municipal Corp.*, 554 F. 3d 1271, 1275 (10th Cir. 2009); *see also Monnell*, 436 U.S. at 690. To show liability on this basis, a plaintiff may argue the policy is facially unconstitutional or that it is unconstitutional as applied to him. *Christensen,* 544 F.3d at 1280. Municipal liability on this basis is not supported where a police officer, carrying out a discretionary duty, enforces a constitutional municipal policy in an unconstitutional manner. *Id.*

Similarly, if a plaintiff shows that a constitutional policy affirmatively caused a series of unconstitutional incidents, the municipality adopting that policy may be liable under § 1983. *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). In either case, the policy must be the "moving force" behind the alleged constitutional violation. *Tuttle*, 471 U.S. at 818; *Monnell*, 436 U.S. at 691. In such cases, the initial inquiry is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton v. Harris*, 489 U.S. 378, 385 (1989).

Although Plaintiff alleges in this case that the City maintained unconstitutional policies

which are relevant to his claims, his response brief fails to identify any policy on which that allegation is based.   He offers no argument or evidence in support of this contention; instead, Plaintiff focuses on allegations directed at Klika and others whose conduct allegedly violated Plaintiff's rights.  Assuming, as Plaintiff alleges, that  Klika and other unidentified police officers engaged in conduct consistent with City policies or procedures but that they did so in an unconstitutional manner, that is not sufficient to render the City liable unless the policies or procedures they enforced were unconstitutional.  *Christensen,*  544 F.3d  at 1280.   Plaintiff has failed to offer argument or evidence to show any City policies or procedures  were unconstitutional. To the extent he seeks to hold the City liable because it adopted unconstitutional policies or procedures, the City's motion for summary judgment is granted.

Failure to train or supervise police officers:

Where law enforcement conduct is at issue, §1983 municipal liability may also be premised on a failure to train or supervise personnel.  *Allen v. Muskogee*, 119 F.3d 837, 841-42 (10th Cir. 1997).  A municipality may be held liable for "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Brammer-Hoelter,* 602 F. 3d at 1190(citations omitted).   The Tenth Circuit has explained the evidence required to establish deliberate indifference for this purpose:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct.  In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

14

*Bryson*, 627 F. 3d at 789 (citing *Barney v. Pulsipher*, 143 F. 3d 1299, 1307-08 (10th Cir. 1998)).

Evidence that police officers violated certain policies is not sufficient to show the officers were inadequately trained, however, because "a municipality's failure to train 'musts reflect a deliberate or conscious choice by the municipality.'"  *Zuniga v. City of Midwest City,* 68 F. App'x 160, 164 (10th Cir. 2003) (unpublished opinion) (quoting *Barney,* 143 F. 3d at 1307).

Although Plaintiff alleges in this case that the City failed to adequately train and supervise defendant Klika and the unidentified other police officers, he has failed to articulate the basis for this contention.  He points to no evidence demonstrating a lack of training; his response brief does not even address this issue.  Nor does he present any evidence to show the City was deliberately indifferent, as required by the Tenth Circuit.  The City's undisputed evidence shows that Klika was required to participate in specific training throughout his career as a police officer.  Its undisputed fact statements identify Klika's training in subjects directly related to the appropriate investigation of child abuse allegations; it also lists numerous training courses related to search and seizure, arrest, and protection of a suspect's rights.  Plaintiff does not dispute that such training was required or that Klika attended the required courses.

Plaintiff presents no argument or authority suggesting the identified training was deficient in any manner, and he  fails to explain why he believes the training was inadequate.  Plaintiff has offered no evidence sufficient to create a material fact dispute with regard to the sufficiency of Klika's training.

With respect to his allegation that the City failed to properly supervise Klika, Plaintiff points to no evidence suggesting that the City was on notice of any performance deficiencies or alleged improprieties in Klika's conduct prior to this incident.  There is no evidentiary basis  for a contention

15

that the City had actual or constructive notice of a pattern of unconstitutional behavior by Klika or any other law enforcement officer involved in this case.   Nor does Plaintiff cite evidence to show that the City had actual or constructive notice that the specific circumstances presented in this case were likely to result in a violation of constitutional rights by Klika or any other police officer.

Plaintiff has failed to present evidence sufficient to create a material fact dispute regarding the City's potential § 1983 liability on his claim that it failed to properly train or supervise Klika and the other officers.   The City is entitled to judgment on that claim.

Ratification of unconstitutional conduct:

A municipality may be liable under § 1983 if it ratifies the employee's unconstitutional conduct.  To support liability on this basis, however, a plaintiff must show "ratification by such final policymakers of the decisions-and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval." *Bryson*, 627 F. 3d at 788 (citations omitted).   "[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Id.* at 790.  Ratification occurs where "a subordinate's position is subject to review by the municipality's authorized policymakers," and those policymakers "approve a subordinate's decision and the basis for it." *Moss v. Kemp*, 559 F. 3d 1155, 1169 (10th Cir. 2009) (citing *Melton v. City of Oklahoma City,* 879 F. 2d 706, 724 (10th Cir. 1989)).  Where the employee has discretion to exercise certain functions, however, liability based on ratification does not attach. *Penbaur v. City of Cincinnati,* 475 U.S. 469, 482 (1986).

In this case, Plaintiff fails to explain the basis for his contention that the City ratified the alleged unconstitutional conduct of Klika or any other police officer.   Plaintiff points to no evidence

16

that Klika's actions were subject to  review or approval by any City policymaker or that any

policymaker concluded Klika acted unconstitutionally and nevertheless approved his conduct.

Again, Plaintiff fails to present argument, evidence, or authority which could render the City liable

on a ratification theory.

Having reviewed the evidence in the record most favorably to Plaintiff,  the Court concludes

that Plaintiff has failed to present authority or argument sufficient to create a material fact dispute

regarding the City's liability under § 1983.   The City has presented extensive legal argument

regarding the potential bases for § 1983 liability, and has submitted extensive evidence in support

of its contention that Plaintiff cannot sustain his burden on any of these bases.   Plaintiff's response

ignores these arguments, and contains no specific factual contention or legal argument in support

of his § 1983 allegations against the City.  Instead, he summarizes case law regarding the summary

judgment standards, and argues, without supporting evidence, that there are sufficient material

factual disputes to preclude judgment for the City.[8]  Otherwise, Plaintiff's response discusses only

his allegations against Klika.    The City's motion for summary judgment is granted as to the

§ 1983 claims asserted against it.

GTCA Liability:

Plaintiff also asserts a tort claim against the City, arguing that it is liable for the conduct of

Klika and other police officers under the GTCA.  The City also seeks summary judgment on this

---

[8]Plaintiff argues that, in assessing the propriety of summary judgment, the Court "must disregard all evidence favorable to the moving party and give credence to the evidence favoring the nonmovant." Response at page 13. Plaintiff cites *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), and concludes "Plaintiff's version of the disputed facts is assumed to be correct." *Id*.  Plaintiff ignores the fact that favorable construction of a plaintiff's factual contentions is required only where he has submitted evidence which creates a fact dispute; in this case, Plaintiff has failed to present evidence or argument in support of his § 1983 claims against the City. Instead, his response is directed only at his allegations against Klika, and the only legal argument he presents is directed at his GTCA claims against the City.

claim.

Tort actions asserted against a municipality and its employees are governed by the GTCA, Okla. Stat. tit. 51, § 151, *et seq*. The GTCA is the exclusive means by which an injured plaintiff may recover tort damages from a political subdivision of the state, including a municipality. *Fuller v. Odom*, 741 P. 2d 449, 451 (Okla. 1987); Okla. Stat. tit. 51, § 153(B). However, a political subdivision is liable only for the torts committed by its employee while that employee was acting within the scope of his employment. 51 Okla. Stat. § 163(C); *see also Carswell v. Oklahoma State University*, 995 P. 2d 1118, 1123 (Okla. 1999). The GTCA defines "scope of employment" as "performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud." Okla. Stat. tit. 51 § 152(9). Conduct outside a police officer's scope of employment requires a finding that "the acts are so extreme as to constitute a clearly unlawful usurpation of authority the deputy does not rightfully possess." *DeCorte v. Robinson* 969 P. 2d 358, 361-62 (Okla. 1998) (quotation omitted).

The GTCA imposes liability on a political subdivision only "to the extent and in the manner provided" in the GTCA. Okla. Stat. tit. 51, § 152.1(B). As the City correctly argues in its motion, the GTCA contains specific exemptions by which a political subdivision is not liable even for good-faith conduct of its employee. Okla. Stat. tit. 51, § 155. The City argues that Plaintiff's allegations of tortious conduct are subject to these exemptions.

The City also argues it is exempt from liability for Plaintiff's claim of damages resulting from his detention at the Attorney General's office while the search was being conducted. The City

contends that he was detained by employees of the Attorney General, and City employees were not present during this time period.   As a result, the City argues its liability is precluded under the GTCA exemption for any damage resulting from the acts of third parties who are not its employees. Okla. Stat. tit. 51 § 155(18).   The exemption provides that a political subdivision is not liable for a "loss or claim" resulting from, *inter alia,* the act or omission of "a person other than an employee" of that political subdivision.   *Id.*   Because the Attorney General's employees are not City employees, the City argues it cannot be liable for any damages which Plaintiff claims to have incurred as a result of his detention.

The evidence in the record before the Court shows that Plaintiff was detained by Roger Chrisco, an investigator employed by the Attorney General, whose report is submitted by the City as its Exhibit 65.   Investigator Chrisco's report states that he remained with Plaintiff until "approximately 3:00 when OCPD Detectives Mike Klika and Robby Robertson arrived."   City Ex. 65, p. 2.   The evidence does not support Plaintiff's contention that he was detained by Oklahoma City police officers; there is no evidence that, during the relevant time period, any City employee was present.   Plaintiff testified in his deposition that an investigator from the Attorney General's office stayed with him; he did not recall the investigator's name.   Plaintiff's dep., City Ex. 55, p. 101. Defendant Klika testified that he was not present when Plaintiff was taken away from his computer, and he did not see him at the Attorney General's office until later in the day after the search of Plaintiff's residence was completed.   Klika dep., City Ex. 46, p. 92.

The only evidence that suggests Oklahoma City police had any involvement in Plaintiff's detention is Defendant Klika's testimony that the investigators were concerned that Plaintiff had the

technical ability to remove material from his home computer by accessing it from his office computer.[9]  *Id.,* p. 91, line 25; p. 92, lines 1-8.  Klika testified that, as a result of that concern, "we asked that he not have a computer to work with until that time that we could make his computer safe at home."  *Id.*, p. 92, lines 6-8.

In fact, Klika testified that he did not tell Plaintiff he could not leave the premises of the Attorney General's office, nor did Klika tell him he could not telephone his attorney; he did not know if Plaintiff had a cell phone on his person.  Klika dep., p. 94; p. 95, lines 1-7.  According to Klika, Plaintiff was not under arrest and did not have to talk to Klika.  *Id.*, p. 95, lines 10-13.  Klika believed Plaintiff could have left his office at any time.  *Id.*, p. 94, lines 11-14.  Klika testified that, when Plaintiff was leaving the Attorney General's office, Klika asked if he would permit a search of his vehicle, and Plaintiff signed a written note authorizing him to do so.  Klika dep., p. 95, lines 10-20.  Plaintiff also testified that he granted written permission allowing Klika to search the vehicle.  Plaintiff's dep., City Ex. 55, p. 90, lines 15-21; p. 91, lines 1-10.

In the separate Order addressing Klika's summary judgment motion, the Court has concluded that the detention of Plaintiff was not unreasonable or unlawful.  Accordingly, even if Klika was involved in that detention, no liability can be imposed on the City under the GTCA.

Construing his allegations most liberally in his favor, it also appears that Plaintiff seeks to

---

[9]The City's evidence reflects that one of the purposes of the search of Plaintiff's residence was to determine whether his home computer contained pornography or child pornography.  According to Inspector Helm, in witness interviews, Toni Cooper and Dawn Miller both told investigators that Plaintiff regularly viewed pornography on his home computer, that he ordered pornographic films, and maintained pornographic material in his home, either on his computer or otherwise.  Helm affidavit for search warrant, City Ex. 51, pp. 6-13.  Toni Cooper was, at the time, Plaintiff's girl friend and the mother of his minor child, T.C.; she also initially reported that her other minor child, K.C., had told her Plaintiff improperly touched him as well as H.M.T.  Dawn Miller was Plaintiff's former girlfriend.

hold the City liable because, following this investigation, his employment was terminated.  To the extent that Plaintiff seeks to hold the City liable under the GTCA on this basis, he cannot prevail on that theory because there is no evidence the City had any role in Plaintiff's termination. Plaintiff was not employed by the City, and only the Attorney General had the authority to terminate him. Furthermore, as the City points out, Plaintiff testified in his deposition that he does not know why he was terminated. Plaintiff's dep., City Ex. 55, p. 40, lines 12-25.   There is no evidence to support this claim.

The GTCA exemption in § 155(18) also precludes the City's liability for any tortious conduct by DHS employees, as they are not City employees.  Thus, to the extent Plaintiff contends DHS employees engaged in tortious conduct, the City cannot be liable for that conduct under the GTCA.       The City also argues that, to the extent Plaintiff seeks to impose upon the City liability for  damages based on the deprivation of his right to custody of H.M.T., there can be no liability on this basis.  As set forth in the Court's Order addressing Klika's summary judgment motion, Klika engaged in no wrongdoing or unlawful conduct with respect to any alleged restrictions on Plaintiff.  Initially, the record establishes that, pursuant to his joint custody agreement with Turner-Burgess, he did not have custody of H.M.T. on April 20, the date on which she was placed in protective DHS custody.  City ex. 64, p. 5.  Furthermore, he voluntarily agreed to a court order preventing him from seeing H.M.T. during the pendency of the DHS investigation.  City Ex. 56. Thus, Plaintiff cannot show any loss or injury resulting from his inability to contact H.M.T.

To the extent Plaintiff's allegations of tortious conduct by City employees are based on the police involvement in the April 20, 2005 placement of H.M.T. in protective DHS custody, the City

contends it cannot be liable because its employees were acting in pursuit of a criminal investigation of sexual abuse of a child.  According to a GTCA exemption,  which provides in pertinent part that a political subdivision "shall not be liable if a loss or claim results from...adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy."  Okla. Stat. tit. 51 § 155(4).   Relying on  *Skurnack v. State ex. Rel. Department of Human Services,* 46 P. 3d 198, 200-01 (Okla. Civ. App. 2002), the City argues that § 155(4) precludes liability for the actions of employees investigating child abuse in accordance with Oklahoma law.

In *Skurnack,* DHS employees received a report of child abuse or neglect and, pursuant to their duty under Okla. Stat. § 7106(A)(1)[10] to promptly investigate such allegations, attempted to interview the subject children.  The parents refused to voluntarily consent to the interview, and DHS obtained a court order, ultimately placing the children in DHS custody pending its investigation. The court later found they were not deprived or abused, and the children were returned to their parents. The parents sued the DHS, alleging its employees acted tortiously in placing the children in DHS custody.   DHS argued it was immune from liability under the GTCA § 155(4) because its employees were fulfilling a statutory duty to investigate child abuse allegations.   The Court of Appeals agreed, affirming the state court's grant of summary judgment.  *Id.* at 201.

In response,  Plaintiff argues that, pursuant to *Oklahoma Dept. of Public Safety v. Gurich*, 238 P. 3d 1 (Okla. 2010), the GTCA does not provide "blanket immunity" where an employee negligently performs a law enforcement function, notwithstanding § 155(4).  The Court in *Gurich*

---

[10]The cited statute has since been recodified, and the statutory duties regarding investigation of  child abuse allegations are now set forth at Okla. Stat. tit. 10A § 1-2-105, *et seq.*

was faced with the question whether the GTCA extended immunity to the Department of Public Safety when a Highway Patrol Officer engaged in a high-speed pursuit resulting in the death of an innocent bystander.  The court held an officer engaged in a pursuit owes a duty of care to an innocent bystander; thus, if he engages in a pursuit with reckless disregard for the safety of bystanders, his employer may be liable for his negligence.  *Id.* at 8.  Underlying its decision was the determination that "reckless disregard" is the proper standard of care for evaluating whether the driver of an emergency vehicle breached a duty to others; mere negligence is an insufficient standard in such circumstances.  *Gurich*, 238 P. 3d at 7. Plaintiff argues that, pursuant to *Gurich*, the City is not immune from liability for any of the  alleged tortious acts of Klika in connection with the investigation of child molestation allegations in this case.

The Court does not find Plaintiff's argument persuasive as applied to the facts of this case. Although *Gurich* holds that § 155(4) does not automatically shield a political subdivision from GTCA liability in all cases, it addressed a specific immunity claim involving high speed pursuits by law enforcement officers.  In contrast, this case involves application of Oklahoma's statutory scheme requiring investigation of sexual abuse allegations.  The Court does not interpret *Gurich* as broadly as Plaintiff suggests, and thus does not conclude that it must be read as precluding immunity for the City under the facts of this case.

Plaintiff does not respond to any of the other arguments asserted by the City, and he fails to address any of the other GTCA exemptions on which it relies.  Accordingly, the Court finds that, under the facts of this case as set forth in the evidence, the City is immune from GTCA liability. The City's motion for summary judgment is thus granted as to Plaintiff's state law claims.

Conclusion:

For the reasons set forth herein, the City's motion for summary judgment [Doc. No. 114] is GRANTED as to all claims asserted against it in this case.

IT IS SO ORDERED this 29th day of September, 2011.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE