**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

|  |  |  |
|---|---|---|
| JOHN WILLIAM TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CIV-07-268-D |
| | ) | |
| MICHAEL E. KLIKA, et aI., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is the motion for summary judgment [Doc. No. 118] of Defendant Carol Houseman ("Houseman"). Plaintiff timely responded to the motion, and Houseman filed a reply.

Background:

Plaintiff brings this action pursuant to 42 U. S. C. § 1983,[1] seeking damages for alleged constitutional rights violations resulting from a child molestation investigation conducted by the Oklahoma City Police Department, the Oklahoma Department of Human Services ("DHS"), and the Oklahoma Attorney General. Houseman is the DHS social worker assigned to investigate the molestation allegation after it was referred to DHS by the Oklahoma City police; the referral followed an investigation of an allegation initially reported to Oklahoma City police officer Michael E. Klika ("Klika") during his investigation of a domestic violence complaint. Houseman and Klika are sued in their individual capacities. Individual capacity claims are also asserted against five "John Doe" defendants, who are alleged to be Oklahoma City police officers, and the City of

---

[1]Plaintiff also asserts a claim pursuant to the Oklahoma Governmental Tort Claims Act, but that claim is not directed at Houseman; accordingly, it is not addressed in this Order.

Oklahoma City ("City").[2]

In the Second Amended Complaint, Plaintiff alleges his Fourth and Fourteenth Amendment rights were violated during the investigation of an allegation that he sexually molested his five-year old daughter, H.M.T. Plaintiff, who was employed at the time by the State of Oklahoma as an Assistant Attorney General, alleges he was unlawfully seized by Houseman, Klika, and employees of the Attorney General when he was detained at his workplace on April 20, 2005 during a search of his residence. He also contends Houseman and others[3] violated his rights by taking H.M.T. into protective custody without prior notice to Plaintiff and by imposing restrictions on his contact with H.M.T. during the investigation conducted by DHS.

In her motion, Houseman argues she is entitled to summary judgment on the claims asserted by Plaintiff because the undisputed material facts establish that his constitutional rights were not violated. She further contends that she is entitled to qualified immunity from § 1983 liability. Plaintiff argues that disputed material facts preclude summary judgment for Houseman.

Summary judgment standard:

Summary judgment shall be granted where the undisputed material facts establish that one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

---

[2]Plaintiff also sued Assistant Attorney General Tom Gruber, the Attorney General of Oklahoma, and DHS. However, by Joint Stipulation of Dismissal [Doc. No. 108], his claims against Tom Gruber and the Attorney General were dismissed with prejudice. Although Plaintiff continues to list DHS as a defendant, he acknowledges that it is no longer a party because it was dismissed by Order of April 24, 2007 [Doc. No. 33]. Plaintiff has never identified the John Doe defendants, and service of process has never been perfected on those defendants.

[3]These allegations are also directed at Klika, whose summary judgment motion is addressed in a separate Order.

To avoid summary judgment, a plaintiff must present more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* The facts in the record and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007); *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir.2005).

Where the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322. The movant is not required to disprove the cause of action, but need only point to "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 671 (10th Cir. 1998). The burden then shifts to the nonmovant to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. (citations omitted). The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *Adler*, 144 F .3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992), *cert. denied*, 506 U.S. 1013 (1992)). A plaintiff cannot rely on the allegations in his complaint, his personal beliefs, or conclusory assertions; rather, he must come forward with evidence outside the pleadings sufficient to create a factual dispute with regard to the issue on which judgment is sought. Fed.R.Civ.P. 56(c); *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *Adler*, 144 F.3d at 671-72.

To avoid summary judgment, a plaintiff must present facts in evidence sufficient to show more than "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). It is not the responsibility of the trial court to

3

attempt to locate evidence not cited by Plaintiff which could support his position. *Adler*, 144 F.3d at 671.

"The purpose of a summary judgment motion is to assess whether a trial is necessary." *Berry v. T-Mobile USA, Inc.*, 490 F. 3d 1211, 1216 (10th Cir. 2007) (citing *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995)). "In other words, there 'must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Panis v. Mission Hills Bank, NA.*, 60 F.3d 1486, 1490 (10th Cir. l995)).

In this case, the Court must also apply the Tenth Circuit's analysis applicable to summary judgment motions asserting qualified immunity. *Toevs v. Reid*, 646 F. 3d 752, 755 (10th Cir. 2011). "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When a defendant asserts qualified immunity at summary judgment, the responsibility shifts to the plaintiff to meet a 'heavy two-part burden.'" *Lobozzo v. Colorado Dept. of Corrections*, 2011 WL 2663548, at *2 (10th Cir. July 8, 2011) (unpublished opinion) (quoting *Case v. West Las Vegas Indep. Sch. Dist.*, 473 F. 3d 1323, 1327 (10th Cir. 2007)). "[T]o avoid judgment for the defendant based on qualified immunity, 'the plaintiff must show that the defendant's actions violated a specific statutory or constitutional right, and that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue.'" *Toevs*, 646 F. 3d at 755 (quoting *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006)). "We may address these questions in whatever order is appropriate under the circumstances." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). "If the plaintiff fails to

satisfy either part of the

two-part inquiry, we must grant the defendant qualified immunity." *Lobozzo*, 2011 WL 2663548,

at *2.

<u>The record before the Court:</u>

In her motion, Houseman sets out a list of 11 facts which she contends are material and

undisputed. In response, Plaintiff states he "admits or denies as immaterial" Fact Nos. 1, 3, 4, 10

and 11. Plaintiff then sets out his response to the additional facts which he contends are disputed.

Plaintiff's statement that he "admits or denies as immaterial" some of Houseman's fact

statements is insufficient to create a dispute regarding those statements. Plaintiff does not identify

the fact statements he believes are immaterial, nor does he offer any explanation or evidence to

support his belief.

Pursuant to the Local Civil Rules of this Court, the party opposing summary judgment must

include a statement identifying the material facts which he contends are disputed:

> The brief in opposition to a motion for summary judgment (or partial summary
> judgment) shall begin with a section which contains a concise statement of material
> facts to which the party asserts issues of fact exist. Each fact in dispute shall be
> numbered, shall refer with particularity to those portions of the record upon which
> the opposing party relies and, if applicable, shall state the number of the movant's
> facts that is disputed. All material facts set forth in the statement of the material facts
> of the movant may be deemed admitted for the purpose of summary judgment unless
> specifically controverted by the statement of material facts of the opposing party.

LCvR 56.1(c). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary

evidence or other sufficient reason to disbelieve it." *Grynberg v. Total, S. A.,* 538 F. 3d 1336, 1345

(10th Cir. 2008) (citing Fed.R.Civ.P. 56(e) and *Trevizo v. Adams*, 455 F.3d 1155, 1159-60 (10th

Cir.2006)).

When challenging the movant's assertion that a fact is undisputed, the responding party has

the burden "to ensure that the factual dispute is portrayed with particularity, without...depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F. 3d 1283, 1290 (10th Cir. 2004) (quotations omitted);*Mitchell vs. City of Moore*, 218 F. 3d 1190, 1199 (10th Cir. 2000) (district court is "not obligated to comb the record" to determine the basis for a claim that a factual dispute exists). If a nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be deemed admitted for purposes of the motion. Fed. R. Civ. P. 56(e)(2).

In this case, Plaintiff fails to specifically identify the basis for denying any of the facts set forth in Houseman's fact statement Nos. 1, 3, 4, 10 or 11. Accordingly, those facts are admitted for purposes of this motion.

The evidence before the Court establishes that the DHS received from the Oklahoma City police an initial referral or report of alleged sexual abuse of H.M.T. by Plaintiff on April 19, 2005. A copy of DHS's resulting "Report to District Attorney" regarding the referral is submitted under seal as Houseman Ex. 1. At the time the allegation was referred to DHS, Houseman held the position of Child Welfare Specialist III, and she had been employed as a DHS social worker for more than ten years. The referral was assigned to Houseman.

The molestation allegation was reported to Klika during his investigation of a March 12, 2005 domestic violence complaint by Plaintiff's girlfriend, Toni Cooper. On or about April 7, 2005, Ms. Cooper reported to Klika that her three-year-old son, T.K.C., told her Plaintiff had put his finger in T.K.C.'s bottom; he also said Plaintiff did the same to H.M.T. It is not disputed that Klika and police department Child Abuse Unit inspectors Teresa Sterling and Priscilla Helm investigated that allegation, resulting in the referral to DHS. Although Houseman was not involved in the police

department's investigation, the evidence related to that investigation explains the circumstances under which Houseman became involved. The evidence regarding the investigation by Klika and Child Abuse Unit inspectors Sterling and Helm up to and including April 20, 2005 is set out in the Court's separate order addressing Klika's motion for summary judgment; the Court's discussion of the record is adopted as though fully set forth herein.

On April 20, 2005, Houseman was contacted by Inspector Sterling regarding the molestation investigation. The record reflects that, prior to April 20, Houseman was not aware of the evidence obtained in the police department investigation, and she did not know that Plaintiff was the alleged perpetrator; she learned his identity while reviewing the reports provided to her by Inspector Sterling.[4] Houseman dep., Houseman Ex. 2, p. 10, lines 7-25; p. 11, lines 1-10.

On April 20, Houseman accompanied Sterling to H.M.T.'s school. Inspector Sterling interviewed H.M.T. in Houseman's presence, and they then took H.M.T. to the Child Abuse Response and Evaluation ("CARE") Center to be interviewed by forensic interviewer Vicki Gauldin. It is not disputed that the CARE Center is a nationally accredited child advocacy center which has participated since 1993 in an interagency, interdisciplinary approach to child abuse issues in Oklahoma County as part of the county's multidisciplinary child abuse team; the team was formed

---

[4]Houseman also testified that, prior to April 20, the Oklahoma City police had advised DHS of an ongoing police investigation of child molestation that would likely be the subject of a formal referral. According to Houseman, Klika attended a regularly scheduled DHS meeting and advised that, during a domestic violence investigation, he received an allegation of possible molestation; he also advised that Child Abuse Unit inspectors Sterling and Patricia Helm were involved in investigating the complaint. Houseman dep., Ex.2, pp. 11-13; p. 15, lines 7-22. Houseman recalled no names were provided, but she understood a high-profile individual was possibly involved. Id., p. 15, lines 9-22. She also said the Care Center sometimes receives such notifications involving individuals who, because of their employment or position, would be described as high-profile. Houseman did not recall the exact date of this meeting, and said it could have been one to three weeks prior to April 20. However, she also testified that DHS was not authorized to begin its own investigation because it must receive a referral in order to do so. A referral may consist of a direct complaint to DHS or a formal request by police officers who have received a complaint and initiated an investigation. Houseman dep., p. 18, lines 14-25; p. 19, lines 1-25; p. 20, lines 1-6.

pursuant to an interagency agreement, a copy of which is submitted as Houseman Ex. 4. The interagency team consists of several agencies, including but not limited to the Oklahoma County District Attorney's Office, DHS, and the Oklahoma City police department. *Id.*

It is not disputed that, when the molestation allegation was received, Plaintiff shared joint custody of H.M.T. with his former wife, Mista Turner-Burgess. Although the specific terms of their custody agreement are not in the record before the Court, the evidence reflects that the parties agree H.M.T. spent several nights with Plaintiff at his residence during the week as well as some weekends. It is not disputed that Plaintiff was not notified in advance regarding Ms. Gauldin's interview of H.M.T.

The record reflects that Houseman and Sterling observed Ms. Gauldin's April 20 interview of H.M.T., but did not directly participate in the interview. It is also not disputed that, following the interview, Lt. Darla Dugan, who was Sterling's supervisor in the police department's Child Abuse Unit, made the decision to place H.M.T. in protective custody at the Oklahoma County juvenile shelter, where H.M.T. remained overnight. The parties agree that H.M.T. was returned to her mother, Ms. Turner-Burgess, on the morning of April 21, 2005, as directed by an Oklahoma County Assistant District Attorney. The record also reflects that, on April 21, 2005, Plaintiff and Ms. Turner-Burgess presented to the Oklahoma County District Court an Emergency Temporary Order in which they agreed that Ms. Turner-Burgess would have temporary sole custody of H.M.T. pending the DHS investigation of Plaintiff. The Order also directs Ms. Turner-Burgess to "keep the minor child away from and out of complete contact with" Plaintiff and to not restore his visitation rights until the DHS investigation is concluded with a determination that "he is fit and capable of

resuming custody." A copy of the Order is submitted as Klika Ex. 18.[5] Plaintiff expressly agreed to the April 21 temporary revision of the custody arrangement, although he denied the allegation that he molested H.M.T. *Id.* It is not disputed that Houseman did not oppose the April 21 modification of the existing custody order, and she agreed that H.M.T. should be returned to her mother.

The evidence establishes that DHS continued its investigation of the molestation referral and concluded that investigation on June 14, 2005. Consistent with applicable procedures, DHS reported its findings to the Oklahoma County District Attorney. The findings included a recommendation of "Court Intervention Requested," thus recommending to the Oklahoma County District Attorney that a deprived child action be filed. DHS Report to District Attorney, Houseman Ex. 1, p. 2. However, no deprived child petition was filed because DHS's finding that its investigation confirmed the allegation was later reversed by the Appeals Section of DHS's Children and Family Services Division, pursuant to administrative appeals filed by Plaintiff and by Ms. Turner-Burgess.

The record further reflects that, upon Plaintiff's motion, his visitation rights were further modified by Court order of June 22, 2005, submitted as Klika Ex. 19. The Order expressly provides that DHS expressed "no objection to supervised visitation" with H.M.T. as of that date, and DHS agreed that Plaintiff should be allowed visitation to be supervised by Ms. Turner-Burgess. The Order provides details regarding the terms of the visitations, and it appoints a guardian ad litem for H.M.T. Klika Ex. 19. Plaintiff's counsel expressly agreed to the Order.

The record also reflects that, on August 8, 2005, Plaintiff's overnight visitation rights with H.M.T. were restored, with visitation to be supervised by a third party until further court order. August 8, 2005 Order, Klika Ex. 20. The August 8 Order also provided that Plaintiff and Ms.

---

[5]Although Houseman and Plaintiff do not submit the April 21, 2005 Order in their exhibits, it is a part of the record before the Court in this case; accordingly, it may be considered by the court pursuant to Fed.R.Civ.P. 56(c)(3).

Turner-Burgess would agree to select the party to supervise the visitation. The Order directed DHS to "release all further decisions affecting the minor child's custody to the parties and this Court," and determined DHS need not be notified of further proceedings in the matter. Klika Ex. 20.

It is undisputed that, on April 20, 2005, Oklahoma City police officers conducted a search of Plaintiff's residence pursuant to a warrant issued by Oklahoma County District Judge Ray C. Elliott. Inspector Helm was present during the search, and she had previously prepared a 17-page affidavit in support of the warrant. Copies of the affidavit and search warrant are contained in the record as Exhibits 51 and 63, respectively, to the City's summary judgment motion in this case. Helm's affidavit summarizes the investigation conducted by the police, including two interviews with Plaintiff's girlfriend, Toni Cooper, who initially reported to Klika her concern that, based on comments made by her three-year-old son, Plaintiff might have sexually molested her son and H.M.T. Helm also summarizes interviews with Plaintiff's former girlfriend, Dawn Miller, and the forensic interview of Ms. Cooper's son. City Ex. 51. The Helm affidavit reports that, based on these interviews, Inspector Helm believed Plaintiff possessed pornographic material in his residence, including on his computer, and that he also had the capability of remotely accessing his home computer in a manner that could delete files and thus compromise evidence.[6] *Id.*

The record also establishes that, while the search warrant was being executed, Plaintiff was detained at his office by his supervisor, Assistant Attorney General Tom Gruber, and by Roger Chrisco, an investigator for the Attorney General's office. As explained in the Court's separate order addressing Klika's summary judgment motion, Plaintiff was detained because the investigators were

---

[6]The detailed explanation set out in Helm's affidavit is discussed in the Court's separate order addressing Klika's summary judgment motion; that discussion is adopted as though fully set forth herein.

concerned that he might be able to remotely access his home computer and delete or otherwise compromise evidence relevant to the investigation.

Application:

To prevail on a § 1983 claim, a plaintiff must prove: "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of [law]." *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). State actors "may only be held liable under § 1983 for their own acts." *Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). To impose § 1983 liability on a state actor, a plaintiff must show that such actor personally participated in the alleged violation of federal rights. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Personal participation for this purpose does not necessarily require that the defendant was physically present when the specific violation occurred because "direct participation is not necessary" to impose § 1983 liability. *Mink v. Knox*, 613 F.3d 995, 1001 (10th Cir. 2010) (emphasis in original). However, to prevail on a § 1983 claim, Plaintiff must prove a "causal connection" between the defendant's participation and the deprivation of his rights; to do so, he must establish an "affirmative link between the constitutional deprivation and the officer's exercise of control or direction." *Id.* (citing *Poolaw v. Marcantel*, 565 F. 3d 721, 732 (10th Cir. 2009)).

Fourth Amendment:

In the Second Amended Complaint, Plaintiff alleged that Houseman, Klika and other unidentified police officers violated his Fourth Amendment rights by unlawfully seizing him and conducting an unlawful search. During his deposition, however, Plaintiff withdrew his claims based on an unlawful search of his residence and his vehicle, conceding that the residence was searched

11

pursuant to a warrant, and he consented in writing to the search of his vehicle.[7] Thus, the only remaining Fourth Amendment claim asserts that Plaintiff was unlawfully seized.

The Fourth Amendment protects individuals against "unreasonable searches and seizures." *Porro v. Barnes*, 624 F. 3d 1322, 1325 (10th Cir. 2010). A seizure for Fourth Amendment purposes is not limited to an arrest, as it also applies to less intrusive encounters, including investigative detentions. *Cortez v. McCauley*, 478 F. 3d 1108, 1115 (10th Cir. 2007). Although Houseman is not a police officer, that does not preclude her potential liability for an unlawful seizure, as the Tenth Circuit has held that both police and social workers are subject to the Fourth Amendment requirements applicable to searches and seizures. *Turner v. Houseman*,[8] 268 F. App'x 785, 788 (10th Cir. 2008) (unpublished opinion) (citing *Jones v. Hunt*, 410 F. 3d 1221, 1225 (10th Cir. 2005) and *Roska ex rel. Roska v. Peterson*, 328 F. 3d 1230, 1240-42 (10th Cir. 2003)).

In its separate order ruling on Klika's motion for summary judgment, the Court has concluded the undisputed evidence establishes Plaintiff has failed to present evidence sufficient to create a material factual dispute from which a reasonable jury could conclude his Fourth Amendment rights were violated as a result of the April 20 detention at his office. The Court concluded that, as a matter of law, no Fourth Amendment violation occurred, and granted Klika's motion for judgment.

---

[7]Although Houseman does not submit a copy of the search warrant to her motion, it is not disputed that the warrant was issued by Oklahoma County District Judge Ray Elliott. Klika submits a copy of the warrant as well as the affidavit of Oklahoma City Police Inspector Patricia Helm in support of that warrant. Klika Exs. 1, 7. Plaintiff's advance written consent to search his vehicle is submitted as Klika Ex. 2.

[8]The Circuit in *Turner* affirmed the Order [Doc. No. 33] denying Houseman's motion to dismiss the original complaint on qualified immunity grounds. Subsequently, this Court denied her motion to dismiss the amended complaint based on qualified immunity, finding Plaintiff's allegations deficient but capable of being corrected in a second amended complaint. Order of September 8, 2009 [Doc. No. 78]. The decision on Houseman's motion to dismiss is not dispositive here, however, because the standards applicable to a motion to dismiss are not the same as those governing qualified immunity claims asserted in a summary judgment motion.

Because Plaintiff's Fourth Amendment claim against Houseman is based on the same facts and circumstances as that asserted against Klika, the Court's determination that there was no constitutional violation thus also warrants judgment in Houseman's favor on this claim. However, even if the Court had not reached that conclusion, Houseman is not liable under § 1983 unless Plaintiff presents factual evidence sufficient to show she participated in the April 20 detention. The evidence reflects that Plaintiff cannot do so.

It is not disputed that, prior to April 20, police investigators decided to seek a warrant to search Plaintiff's residence, to interview H.M.T., and to interview Plaintiff's former wife, Mista Turner-Burgess, with whom Plaintiff shared custody of H.M.T. Inspector Helm was assigned to prepare the search warrant affidavit, Inspector Sterling was assigned to contact DHS and arrange H.M.T.'s interview, and Klika was to interview Ms. Turner-Burgess.[9] Houseman testified that she attended an April 20 meeting when these officers' assignments were discussed. Houseman dep., Houseman Ex. 2, p. 131, lines 3-11. However, there is no evidence that she had any role in any of these decisions, including the decision to search Plaintiff's residence or to detain him at his workplace while the search was being conducted. The record establishes it is undisputed that Klika, Helm, and other police officers had previously met with the Attorney General's staff. The record reflects Assistant Attorney General Tom Gruber agreed to detain Plaintiff at his office during the execution of the search warrant, as there was concern Plaintiff might be able to remotely access his home computer and delete or compromise evidence consisting of pornographic images. There is no evidence that Houseman was present during these discussions or that, prior to April 20, she was aware these discussions had occurred.

---

[9]Klika had interviewed Ms. Turner-Burgess in connection with the domestic violence complaint, but that interview occurred prior to the report of possible molestation.

In fact, there is no evidence that Houseman had any knowledge, prior to April 20, that Plaintiff's residence would be searched or that he would be detained. The undisputed evidence in the record establishes Houseman did not even know Plaintiff's identity until April 20.

While *direct* participation in an alleged Fourth Amendment violation is not required to establish potential § 1983 liability, Plaintiff must present evidence sufficient to show that Houseman had some role in directing or controlling the events on which the claim is based. *Mink*, 613 F .3d at 1001. He must present evidence to show a causal connection between Houseman's participation and the injury he claims to have suffered. *Id.*

Construing the evidence most liberally in Plaintiff's favor, the record establishes he cannot show Houseman participated in the search, the detention, or any other occurrence on which he bases his Fourth Amendment claim, or directed or controlled these events. Thus, even if the Court found a factual dispute regarding the lawfulness of Plaintiff's detention, Houseman would not be liable under § 1983. Accordingly, Houseman is entitled to summary judgment on Plaintiff's Fourth Amendment claim.

Fourteenth Amendment:

Plaintiff also contends Houseman and Klika violated his rights because they did not notify Plaintiff in advance of H.M. T.'s placement in protective custody on April 20, 2005. Plaintiff argues the failure to provide notice violates his constitutional right to due process under the Fourteenth Amendment. Construing the allegations most liberally in his favor, it appears that Plaintiff also asserts a substantive due process argument, contending Houseman and Klika violated his right to familial association by placing H.M.T. in custody and, thereafter, by restricting Plaintiff's visitation rights. In her summary judgment motion, Houseman argues that, as a matter of law, no

constitutional violation occurred; furthermore, she argues she is entitled to qualified immunity on this claim because her conduct was consistent with established law at the time of these occurrences.

Notice to the parent and a hearing are generally required before a child may be removed from parents; however, an exception exists for extraordinary situations in which there is a valid governmental interest which justifies postponing the hearing until after the child is removed. *Roska v. Peterson*, 328 F. 3d 1230, 1245 (10th Cir. 2003). Where responsible officials have a "reasonable suspicion" of a threat to the child's safety, that is a sufficient governmental interest justifying removal of the child without prior notice and hearing. *Gomes v. Wood,* 451 F. 3d 1122,1130 (10th Cir. 2006), *cert. denied*, 549 U.S. 1053 (2006). In *Gomes*, the Tenth Circuit rejected the contention that probable cause was required to justify removal of the child. Concluding that reasonable officials could differ in their opinion as to whether a reasonable suspicion justified removal, the Circuit concluded the defendant state caseworker who removed the child without prior notice and a hearing was entitled to qualified immunity from § 1983 liability. *Gomes*, 451 F. 3d at 1131.

The Tenth Circuit has held that, where a child's parent is suspected of sexual abuse, the child may be removed and placed in an overnight shelter without violating the parent's due process rights, so long as a post-deprivation hearing is promptly conducted. *J.B. v. Washington County*, 127 F. 3d 919, 927 (10th Cir. 1997). In *J.B.*, the child was removed by social services workers after an allegation of parental sexual abuse; the parents alleged their due process rights were violated because they did not receive prior notice, and no hearing was conducted prior to the child's removal. Although the child was kept in overnight custody, a hearing was conducted the following day. The Tenth Circuit observed that, "in retrospects" the social services employees could have possibly taken

steps to avoid keeping the child overnight; however, the Circuit found no violation of parental rights on that basis. *J.B.*, 127 F. 3d at 926. Instead, the Circuit found the procedure followed by the employees was reasonably calculated to balance the interests of the parents against the state's interest in protecting the child, given the circumstances faced by the employees at the time the decision was made; thus, no constitutional rights violation occurred. *Id.*

In this case, the undisputed facts establish that, at the direction of Lt. Dugan, H.M.T. was removed and kept in protective custody overnight. The following morning, in a court hearing, she was released to the custody of her mother, Ms. Turner-Burgess, with the Plaintiff's consent that the existing joint custody order be replaced by an order awarding Ms. Turner-Burgess sole custody and suspending Plaintiff's visitation privileges while the DHS investigation continued. Thus, a post-deprivation hearing was promptly conducted, consistent with the Tenth Circuit's decision in *J.B.* Plaintiff did not object to the resulting court order restricting his visitation privileges.

Construing the facts liberally in Plaintiff's favor, even if the actions of Houseman were sufficient to constitute her participation in the decision to place H.M. T. in overnight custody without prior notice to Plaintiff, her actions were consistent with those approved by the Circuit in *J.B.* Plaintiff cannot dispute that, despite his denial of any improper conduct, he was the alleged perpetrator of child sexual abuse. Moreover, he testified in his deposition that, once the allegation was made, the police and DHS had a duty to conduct an investigation. Plaintiff's dep., Klika Ex. 1, pp. 148, 163. Although he was a custodial parent, the officials involved in the decision were required to balance his interests against those of the state in protecting H.M.T. from perceived harm, according to the circumstances they faced at the time. Houseman's own testimony reflects that, once

she learned Helm and Klika agreed H.M.T. could be returned to Ms. Turner-Burgess that evening, it was too late to contact the assistant District Attorney to accomplish that result. As in *J.B.*, a retrospective review of her conduct could arguably show that further efforts might have been taken by Houseman to avoid keeping H.M.T. overnight; however, when viewed from her perspective at the time, the Court easily finds she acted reasonably in light of the circumstances.

Moreover, Plaintiff's arguments in this regard are directed at the purported failure to consider the rights of Ms. Turner-Burgess; however, she has separately asserted her rights in her own lawsuit. Plaintiff offers no authority to support his contention that, as the parent alleged to have sexually molested his child, he had the right to advance notification and a hearing prior to his daughter's placement in protective custody.

The record also establishes that Houseman's conduct was consistent with the requirements of Oklahoma law at the time. In 2005, the applicable Oklahoma statute provided that, with respect to protective custody of a child, officers could remove the child and take him into custody without a prior court order "if continuation of the child in the child's home is contrary to the health, safety or welfare of the child." Okla. Stat. tit. 10 § 7003-2.1 (A)(l) (2005). The statutes were amended in 2009 and recodified at Title 10A § § 1-1-101, *et seq.* As Inspector Helm testified, the statute currently provides there must be an "imminent" threat to the child's safety before she may be taken into protective custody. Okla. Stat. tit. 10A § 1-4-201 (A)(l). However, the immediacy requirement was not the law in 2005. Accordingly, Lt. Dugan was not required to conclude that H.M.T. was in imminent danger prior to taking her into protective custody, and was required to find only that remaining in the home was contrary to her safety or welfare. Plaintiff offers no authority suggesting that Houseman had a duty, or possessed the authority, to take action to attempt to alter Lt. Dugan's

decision. Furthermore, the record reflects that Houseman appeared in court the following morning with Ms. Turner-Burgess and that Houseman did not object to the modification to the custody order which allowed Ms. Turner-Burgess to have sole temporary custody of H.M.T. Plaintiff agreed to that order.

The Court finds that the evidence in the record and the governing law establish that the placement of H.M.T. in protective custody on April 20 without prior notice to Plaintiff did not violate his due process rights under the circumstances. At a minimum, Houseman is entitled to qualified immunity with respect to Plaintiff's claim that she violated his rights by failing to provide Plaintiff with notice; her actions were consistent with Oklahoma law and Tenth Circuit precedent at the relevant time.

Plaintiff also argues, however, that Houseman interfered with his substantive due process right of familial association after April 20, 2005, while the DHS investigation was ongoing. He contends she did so by preventing him from having contact with H.M.T. and by conducting an improper or deficient investigation of the claim.

The Fourteenth Amendment's due process clause protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *Jensen v. Wagner*, 603 F. 3d 1182, 1197 (10th Cir. 2010); *Starkey v. Boulder County Social Services*, 569 F. 3d 1244 (10th Cir. 2009). The parental right is not, however, absolute. States have a compelling interest in protecting the lives and health of resident children. Accordingly, when a child's life or health is endangered by a parent's decision, the state may intervene without violating the parent's constitutional rights. *Jensen*, 603 F. 3d at 1197; *Starkey*, 569 F. 3d at 1253. The Tenth Circuit recognizes that "'the constitutional right to familial integrity is amorphous and always must be

balanced against the governmental interest involved.'" *Starkey*, 569 F. 3 d at 1253 (quoting *Martinez v. Mafchir*, 35 F. 3d 1486, 1490 (10th Cir. 1994)).

The state's interest in protecting the life and health of resident children is well established, and justifies state intervention without violating the parent's constitutional rights. *Jensen*, 603 F. 3d at 1197. In such circumstances, the parent's right to familial association must be balanced against the state's interest in protecting children from abuse and neglect. *J. B.*, 127 F. 3d at 927. In balancing these interests, "considerable deference should be given to the judgment of responsible government officials in acting to protect children from perceived imminent danger or abuse." *Id.* at 925. Governmental entities have a "traditional and transcendent interest" in protecting children from abuse. *Maryland v. Craig*, 497 U.S. 836, 855 (1990). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747,757 (1982).

Even if the conduct of an official interferes with the right of familial association, however, the official is not liable unless he acted willfully with the intent to interfere with the parental relationship. *J.B.*, 127 F. 3d at 927. "'Not every statement or act that *results* in an interference with the rights of intimate association is actionable.'" *Id.* (emphasis in original) (quoting *Griffin v. Strong*, 983 F. 2d 1544, 1548 (10th Cir. 1993)). "The conduct or statement must be directed 'at the intimate relationship with knowledge that the statement or conduct will adversely affect that relationship.'" *Id.* (quoting *Griffin*, 983 F.2d at 1548). Absent "evidence of wilfulness or intent," a cause of action cannot be maintained. *J.B.*, 127 F. 3d at 928.

In this case, Plaintiff acknowledges that intentional and willful conduct is essential to maintain this claim against Houseman. He argues that the evidence shows she intentionally and

willfully engaged in an investigation designed to show he was guilty of the molestation allegation, and that she ignored his protestations of innocence and failed to contact witnesses who would support his contention that Ms. Cooper caused him to be falsely accused.[10]

Having reviewed the record, the Court concludes that Plaintiff's accusations regarding Houseman's motivations are not supported by the evidence. The record reflects that she pursued the DHS investigation to which she was assigned, and the record does not support his contention that she intentionally sought to interfere with his visitation rights during the course of the investigation on April 20 or thereafter. The court order of April 21, 2005 restricted his visitation rights during the pendency of the DHS investigation, and he agreed to that restriction. Approximately two months later, while the DHS investigation was ongoing, the restrictions on his visitation rights were modified so that he was allowed visitation with H.M.T.; there is no evidence that Houseman opposed that modification. There is evidence in the record that, in the interim, he urged her to allow him more extensive visitation rights; it is undisputed, however, that the court order remained in effect during this time period. Plaintiff's suggestion that Houseman should have taken action to expand his visitation rights during this time period is not supported by any legal authority. Plaintiff had the right to return to court and seek a modification of the April 21 Order, and he did so – the June 22, 2005 Order reflects that it was issued upon his motion. That order allowed him visitation to be supervised by Ms. Turner-Burgess. He argues that, during this time period, a request was made that he be allowed to attend his daughter's dance recital without Ms. Turner-Burgess being present or to otherwise see H.M.T. in Ms. Turner-Burgess's absence, and Houseman refused, stating

---

[10]The record suggests that, notwithstanding his stated belief that Ms. Cooper falsely accused him, Plaintiff and Ms. Cooper renewed their relationship within a few months after the April 2005 occurrences. Plaintiff s dep., Klika Ex. 1, p. 165, lines 23-25.

such visits would violate the existing court order and also risk endangering Ms. Turner-Burgess's compliance with that order. There is nothing in the record to show that Houseman's response was incorrect or somehow motivated by a wrongful intent; Houseman's response was consistent with the terms of the June 22 Order.

As an attorney who was also represented by counsel, Plaintiff certainly knew he could seek further revision of the June 22 order and asks the court's permission to attend the recital or to otherwise modify the restrictions on his visitation rights. He did not do so.

As Houseman points out in her brief, where a defendant asserts a qualified immunity claim, the plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff. *Moore v. Guthrie*, 438 F. 3d 1036, 1040 (10th Cir. 2006). Thus, even if Plaintiff's contentions, construed most liberally in his favor, could be seen as reflecting mistakes by Houseman in conducting the investigation, they do not overcome her qualified immunity defense to his Fourteenth Amendment claim of interference with parental rights. Under the law, she is entitled to qualified immunity if her actions were objectively reasonable in light of the information she possessed at the time of those actions. *Hollingsworth v. Hill*, 110 F. 3d 733, 738 (10th Cir. 1997). By its very nature, a DHS investigation of child molestation can impact parental rights, especially those of the parent who is the alleged perpetrator. The record before the Court reflects that, in conducting this investigation, Houseman acted in accordance with her ten years of experience as a DHS social worker. There is no evidence that she intentionally sought to wrongfully interfere with Plaintiff's parental rights beyond the interference that necessarily results from such an investigation.

The Court concludes that Plaintiff has failed to present evidence from which a reasonable

jury could conclude that Houseman violated his Fourteenth Amendment right to familial association. Even if her actions could be viewed as violating his right, those actions were consistent with established law at the time, and she is entitled to qualified immunity from § 1983 liability. Accordingly, her motion for summary judgment is granted.

Conclusion:

For the foregoing reasons, the motion for summary judgment of Carol Houseman [Doc. No. 118] is GRANTED as to all claims asserted by Plaintiff in this action.

IT IS SO ORDERED this 29th day of September, 2011.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE